All right, we'll call the case of TR versus the School District of Philadelphia. And we'll call first upon Mr. St. Antoine to go forward. Good morning, your honors. May it please the court. Okay, I'm sorry. I now see Mr. St. Antoine. I'm happy. Thank you, Mr. Roth. Okay, you're reserving time for rebuttal, Mr. St. Antoine? Three minutes, your honor. All right, thank you. Let me say something at the outset here because it impacts on both sides and in particular the division of time of the appellees with respect to the presentation of their argument. I found it very curious as to the order of battle that was pursued here in the briefing. I think, you know, I understand from the standpoint of plaintiff's side why that would be the case. But I am a bit confused. I think we're getting some feedback. Pursued here in the briefing. I think, you know, I understand. I believe someone may have the live audio stream running perhaps, Mr. St. Antoine or Mr. Obad or individuals that are unmuted. But I am a bit confused. I don't believe so, on my end, your honor. Okay. All right, well, let's try this again. First of all... Mr. Obad needs to mute until it's her turn to speak, Mr. St. Antoine. All right, let's try again. I remarked before the electronics here so rudely interrupted me that there is something of an oddity, I think, in the way the case has been presented actually not only to us but the way in which it was ordered in the district court. Before we go into any substantive issues, what I'm referring to is that ordinarily, and perhaps not always, but ordinarily where one has a complaint filed in a putative class action and at the same time a motion for summary judgment, the order of battle would be, and certainly the defense would want it this way, that first the court deal with a dispositive motion. Now, I recognize that there was, first of all, a motion to dismiss here that was denied and then the case proceeded, but I find it very curious that what went forward and what the district court addressed first and what both sides here have argued in their briefs at length is the purely procedural matter of certification. And so I'm going to ask both sides if they can help me to understand what went on in the district court. I know there were a number of scheduled conferences, perhaps settlement conferences, but why was the motion for certification pursued and ruled upon prior to the motion for summary judgment, which, had it been ruled on first as it was ruled upon here eventually, would have rendered going through the certification process completely unnecessary? Mr. Santron, can you help me? Well, I can try, Your Honor. I guess the short answer from the plaintiff's perspective is we did not think on these grounds that there was a basis for summary judgment. As the court may be aware, at the onset of the case, the defendant moved to dismiss the pleading under Rule 12-B-6. Okay. Again, I understand why that would be the plaintiff's position. You want a class action. But in the previous oral argument here, we had the metaphor invoked in another case about a tail wagging the dog. And because Rule 23 is an entirely procedural device and the IDEA issues underlying it are a rise out of a federal statute and regulations that have been promulgated pursuant to that statute, I simply don't understand why there would not have been an effort from the defense. So maybe it's up to the defense, to the appellees to explain this when their time arrives. But I assume you agree that had the order of battle been different here and the rulings the same, you would have had no motion under Rule 23 to proceed with, right? Well, Your Honor, I think that there is a relationship between the two or something going hand in hand, as in my view, it has been inaptly stated elsewhere, including by the district court, are different matters. If there is no substantive legal claim upon which TR, as an individual plaintiff and a class representative, if there's no cause of action upon which to proceed, then judgment is entered against the plaintiffs. Things are done. There is nothing to be certified for which TR is going to be a class representative, right? Yeah, Your Honor, it would be on, I think what the court is contemplating are different grounds for summary judgment. If the argument was made on, that was ultimately adopted by the district court on summary judgment on exhaustion grounds, in the case of TR. Which is what occurred here, right? We would have made the same argument that we made in response to the motion to dismiss. And that was that a dismissal in favor of the administrative proceeding would have been futile. Because we know from the procedural and factual record that TR did pursue an administrative proceeding. You're really, you are not answering my question, Mr. Santorum. And again, I know you want a class action here. I know that's what you want. But you can't build a class action out of a nullity, which is what the motion for summary judgment with a grant of judgment renders this. There is no action to proceed upon, then, for TR. I mean, that is indisputable in class action world. And so I, and for that matter, I mean, the Rules Enabling Act make it quite clear that the rules, which would include Rule 23, can neither expand upon nor contract in any way substantive rights. It sounds to me like that's what you're attempting to do. Well, Your Honor, I will agree with you in this regard. If the defense had been successful in arguing on summary judgment that the plaintiff's claims should be dismissed as a matter of law, that that would have ended the case. I think Your Honor will anticipate that we would have opposed that argument. We would have opposed summary judgment. And had we been successful, then we would have gone on to class certification. Didn't you oppose summary judgment here? We did, Your Honor. So what's left after Judge Goldberg's order? We think that Judge Goldberg was right in this regard, that the decision on summary judgment that he relied upon, namely exhaustion of administrative remedies, went hand in hand with his decision on class certification. In particular, commonality? He found that, yes, in the absence of commonality and the ability to get systemic relief, he found that his earlier decision on the motion to dismiss was not dispositive. Well, that's often the case. I mean, that's black-litter procedural law. Just because a motion to dismiss is not successful hardly means that an eventual motion for dispositive relief is going to fail, right? We can all agree on that. I think so, Your Honor. The difference in this procedural posture is having decided that this case, wrongly in our view, but having decided at class certification that it was not a case for systemic relief, if it was not commonality, then what the court had before it were two I don't understand you to be arguing this in your brief, but are you suggesting that somehow the commonality determination, which, and I don't even understand what hand in hand means, but that the commonality determination is somehow preemptive then for purposes of the conclusion that has to be reached with respect to exhaustion or whether or not exhaustion is futile? If the court on the class certification issue, Your Honor, had agreed with us that there were systemic deficiencies in the school jurisdiction in terms of the provision of language services, then it would have laid the foundation for our renewed position that an administrative remedy, a remand to a hearing officer would have been futile. And we would have opposed summary judgment on that basis. But he did not, at the class certification stage, agree with us that this was an appropriate class, a B2 class seeking systemic relief. And accordingly, that argument was not available to us on summary judgment. All right, let me, has this court ever said anything to suggest that somehow in a case that is procedurally akin to this one, that a determination of commonality is somehow a proxy for the kind of systemic exception that you wish to avail yourself of for exhaustion purposes? Has our court ever even implied such a thing? In terms, Your Honor, I would cite to, among other decisions, this court's decision in Beth B, where under a claim involving an IDA violation, the court held that an administrative proceeding was excused where the parties had sought systemic deficiencies and were seeking system-wide relief. Well, I am familiar with that opinion, and it does not seem to me to be substantive. Let me ask you one more question, and then I'll step back so my colleagues can inquire. But the only thing I have seen, the only case I've been able to identify that sheds light on the situation in which we find ourselves, that is an IDEA action, which I think is just, by way of acronym, rather stunning since the I stands for individual, and that's the kind of remedy that is provided for under the statute. The Hooft v. Tucson Unified School District case out of the Ninth Circuit, and the court said there that the plaintiff's complaint, quote, focuses on the shortcomings of a particular component of the school district's special education program. The alleged violations do not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis. Isn't that the situation that we have here, just a component, translation, interpretation, as a component of the greater program that is required under IDEA? I actually think, Your Honor, that we are seeking relief for a component of meaningful participation by parents, namely language services for this class as a common gateway to allow them to participate in the same manner as their English-speaking counterparts. We are not seeking relief for every conceivable violation of the IDEA or every circumstance where meaningful participation itself may be denied. Rather, for this class, the limited English-proficient parents, we are seeking reform of the district's policies and practices with respect to translation and interpretation services. But you don't attack a specific policy here, do you? I mean, it seems to me that your goal is policy-related. You want more staffing or more money for staffing or however relief can be awarded that would permit greater incidence of translation and interpretation. That's really what you want as an objective here, isn't it? There are, Your Honor is right in terms of outcomes, but there are specific policies that we have implicated. The district has adopted a policy, which they point to, as articulating, codifying their practices in terms of language services. This is referred to as their quick reference guide, and it provides a series of questions that limited English-proficient parents must go through in evaluating whether they get translation services. And ultimately, that decision about whether to provide translation services is made by the special education director. That is a policy. The district has taken a position that it is codifying past practices, and it is something very much that, in our relief, we would want to reform. You said the special ed counselor makes the decision. Did I hear you correctly? Ultimately, the ultimate decision, Judge Harlan, is made ultimately under their policy by the special education director. Okay. And if you don't like the decision that's made for your client, then you can get a fair hearing to challenge that, right? Our position, Your Honor, is that the policy should be that when limited English-proficient parents want a translated IEP document, that they should get one. Let me try to ask my question again, because it must not be clear. You said the special education director determines what the translation services are going to be in a particular case, for a particular child. Let's use TR as an example, right? Okay. Under the policies, Your Honor, there's a chain of command, and there's a series of questions that are asked, and ultimately, it's the special education director that signs off on any decision about it. Okay. So, if you don't like what the chain of command did, and the special education director signs off, if you don't like that, then TR is entitled to a fair hearing, correct? TR could proceed on, or any parent-student in a similar situation could proceed with a due process hearing. Okay. And then, I assume at the due process hearing, the argument you would make would be something like this. The translation service that has been offered by the school district, and approved through the chain of command of the special education director, is inappropriate for my client, and here are the reasons why, right? Quite likely, Your Honor. All right. And then, the hearing officer could say, I agree, Mr. St. Antoine. That's a very good argument. Therefore, I hereby enter as a remedy, precisely what you have asked for, for TR. That could be done by the hearing officer, correct? It is possible, Your Honor. Actually, that was done in one of the cases that figure here, wasn't it? There was individual relief grant. Actually, that's a very important distinction, Your Honor, and I do want to emphasize that. This is not a hypothetical. TR was deprived on TR's mother, was deprived of language services, did invoke the administrative process, and after a nine-month administrative proceeding where there was a violation, a finding of a violation, was awarded only a backward-looking compensatory education. What our lawsuit is seeking to do... That's a matter of relief, but process was afforded individually to TR, correct? And, in fact, there is a right to appeal to a higher administrative body if one is disappointed in either the ultimate determination of no relief or a determination that there is relief, but the complainant believes it's inadequate. That's still available. The only thing that was determined not to be available by this hearing officer was systemic relief, that he lacked the power to do that, right? You're absolutely right. That the hearing officer made very clear that he could not reform the system, which creates the circumstance that is what, in our view, Rule 23B2 classes were intended to address, and that is in a forward-looking way to allow for reform in appropriate circumstances of the system so that individuals, members of the class, aren't faced with recurring violations of common violations and have to resort to individual remedies when there is sufficient cohesiveness in the class that a remedy under Rule 23B2 in a forward-looking way would address the systemic problem. All right, but there's a big if there, and that is if cohesion can be shown, but, again, you seem to be arguing that the promulgation of a procedural device, specifically a B2 action, which came about with the major amendments back in 66, designed aimed most particularly at civil rights cases at that time, afforded injunctive and declaratory relief, and our court has, although it's not an element of Rule 23, has said that cohesion is a requisite in these sorts of cases. How do you get cohesion where each case by statute is individualized, each plan is individualized, the facility with English or another language is going to be different for every parent and different for every student? How does that lend itself to the kind of cohesion that is necessary for an action under Rule 23B2? Your Honor, I think the way to look at it is this. The individualized aspect of the IDEA is the program. The IEP, the central instrument of effectuating a fair and appropriate public education is the program, and that indeed would be individualized by student, and we are not in this lawsuit to challenge any determination about a particular program or even making an individual determination about whether in the past a parent's participation led to a mistake in the program. That's the individual aspect. What we're focusing on is whether parents have a common access to participate, and for those that don't speak English, being able to understand what's going on in a meeting, regardless of the individual circumstances of that student, being able to understand what the teachers are saying about their child is common. All right. Understood. Judge Roth, I know you're not shy about getting in, but I'm kind of a class actions groupie, so I've been monopolizing things here somewhat. I'm happy listening. Don't worry. Okay. Actually, I have only one more question, and then I'll sit back, but about eight years ago, I guess it was, the D.C. Circuit had a case, an IDEA class action, and while that appeal dealt with attorney's fees as kind of a satellite litigation, then-Judge Brown decided that she would make a suggestion, and that recognizing that the horse was already out of the barn and nothing could be done with regard to her point, she nonetheless said that courts should give significant consideration to the IDEA case. Now, that suggestion doesn't rule out a class action in the IDEA field, nor has such a carve-out been made in either the statute or Rule 23, but shouldn't we consider here a similar admonition to Third Circuit judges, that the very individualized nature of an IDEA claim really calls for an especially close look at whether aggregate relief is appropriate? I think the plaintiffs, Your Honor, don't have any resistance to that kind of rigorous scrutiny, including in IDEA cases, and for the very reasons Your Honor has articulated, there certainly will be circumstances where parents have alleged a violation, and the circumstances are too individualized on when they're focusing on the particular program for that parent and student, that an attempt to certify a class act will not withstand that rigorous scrutiny. But here, in this case, we have identified, we believe, a common problem for parents who find themselves in an English-speaking world but have limited English proficiency, and that problem, regardless of the circumstances of their child with disabilities, regardless of what the best program is for that individual child, regardless about what particular input they want to give to that program, what they need, before any of that can happen, is what they need is to be able to communicate with the school. And if they don't have interpretation service, they don't have translation, they can't do that. And what we're seeking is, before you get into the individual issues, what we're seeking, and we believe it is consistent with the history and purpose of B-2 classes, is to allow those parents to communicate. All right. If there is an underlying legal claim, that much we could agree upon. Judge Herman, any questions? Nothing further. Judge Ross? Nothing further. All right. We'll have you back on rebuttal, Mr. San Antoine. And we'll hear from the appellee. And according to the minutes here for argument, Ms. Goebel is to go first. But you've heard my questions of Mr. San Antoine. You've heard my comments at the outset that a plaintiff or that the plaintiff's side would want class relief is certainly not in and of itself surprising, nor for that matter that the first 44 pages of the appellant's 54 pages of argument was directed at class certification. A much more surprising is that the defendant appellees would follow suit and similarly take on the same order of battle, putting the merits of the IDEA claim second. Can you help me understand? Sure. So I think I can lend some historical information to sort of spell out why the proceedings happened at the district court level the way that they did, which is that Plaintiff TR and her mother. Yeah, I'm having some difficulty as well. Maybe if you could get closer to your microphone, turn up your microphone, whatever. Is this better? That is better for me. Judge Roth? Yeah, that's better. All right. Thank you. So TR and her mother exhausted their administrative remedies. The argument that they had not exhausted was not available to us until about half an hour through the class certification. And that was when the plaintiffs voluntarily dismissed TR and her mother from the proceedings. So the failure to exhaust arguments didn't become available to the defense until the summary judgment stage because the current plaintiffs, Ms. Lynn and Ms. Perez, have not. So that's why the proceedings at the district court unfolded in the order that they did. Okay, that explains the district court, but it doesn't explain for me why on appeal, now that you were armed with the district court's ruling on a dispositive motion, which determined that the plaintiff here in the putative class had really, the claim had failed. Would you agree with me? There's no reason then to be discussing a class action. There's no class to form around a pending claim. Yes, I think that makes sense. And I think your focus on the Hoft versus Tucson schools case is a good one. A similarly situated case in this district was the JT versus Dumont public schools. The district court granted a motion for summary judgment. There's some distortion again at your end. It's not a volume issue, but if you could just repeat what you said. Yes, in the JT case is very similar to the Hoft case where there was class claims, but the dismissal was for a failure to exhaust. The issue really is not whether the administrative process can grant the systemic relief that was requested by the plaintiffs. The more appropriate process can grant relief that is appropriate to the issues. All right, but JT was a non-precedential opinion of the school. Are you aware of any other cases where the plaintiffs have given support to the argument that Mr. San Antoine is advancing, that this commonality issue goes hand in hand with the issue of whether or not there is some systemic exception to exhaustion? I think we're in new territory in this circuit. Well, we are in new territory or we would be in new territory because I asked you if you're aware of any authority that exists. Not in this circuit, no. Is there in any circuit? I mean, I think the Hoft case and then the Parent Professional Advocacy League case out of the First Circuit. That's about it in terms of Court of Appeals decisions, isn't it? The First Circuit decision? Yes, that's my, I agree. So, we agree that if the cause of action has been extinguished by a dispositive motion, there is no class to be formed. The plaintiff is left with her individual cause of action to pursue, but she has indeed exhausted. Is that right? The plaintiffs in this action have not exhausted, no. The only plaintiff who had already, she previously... She pursued her administrative proceeding. The remaining plaintiffs, did she not? No, the remaining plaintiffs... Two hours out of the case, right? Correct. So, where does that leave us? It leaves us with two plaintiffs who have not exhausted their administrative remedies and the district court properly dismissed their claims for failure to exhaust. What's left for this court to do? Affirm the underlying rulings by the district court. All right. You were listed as discussing numerosity and summary judgment, and I don't want to distract you from that. If you'd like, I'll leave it to you and my colleagues. Numerosity was properly decided by the district court. Mr. Sinajuan did not get to this point but the district requests that this court affirm the district court's decision on that ground because it is the plaintiff's burden to establish that there are a sufficiently large number of class members. And the only evidence offered by the plaintiffs in front of the district court is the type of evidence that would have required the district court to engage in the type of under this court's decisions, particularly in the Mielo versus Steak and Shake decision, but also in the Hayes and the Marcus cases. But in view of the number of families with English-speaking problems and in view of the there are, out of several thousand non-English-speaking families, that there are a number of families that where the problem exists. I think we only need, say, about 40 to say that, okay, numerosity is satisfied. And in view of the fact we're dealing with several thousand families, isn't it pretty evident that numerosity is satisfied? So the district court, it engaged in the analysis properly when it looked at each piece of the plaintiff's evidence and found in the record, in the factual record, reasons that those pieces of evidence were not a reliable indicator of class status. But Judge Roth is asking, and it should be evident from what I've asked so far, I don't think we have to reach the question, but if we did reach numerosity, given what was proffered here by the plaintiff's side, can't a reasonable inference be drawn with respect to numerosity? Judge Roth has mentioned that in this circuit, 40 or more is, I don't think we've actually used the word presumption, but in Stewart versus Abraham, where we first invoked the 39 or more or the 40 or so, that doesn't get us to the impracticability of Joinder, but it is certainly a big starting point for whether numerosity can be established. And so it becomes a matter of reasonable inference on the part of the district court from the evidence presented, doesn't it? Yes, I agree with you that that's the standard. So how would it be speculation, given the big numbers that were reduced here? Well, consistent with this court holding in Hays, evidence with a big number from which the class members would make up would be a subset. That's not a sufficient basis to find numerosity, that there needs to be more targeted circumstantial evidence closer to a relationship to the actual parties. The definition here is about the language proficiency of the parents, and none of the numbers relating to the language proficiency of the child, and they have numbers relating to the language that is spoken in the home. But the district court properly looked at the record and testimony from district witnesses about why those figures do not necessarily mean that the parent is limited in their English proficiency. All right. Do you have anything more to say with respect to the summary judgment piece here, or have you already addressed that in response to questions? Yes, I think that's been covered. Thank you. Any other questions of Ms. Gobel? No. If not, Ms. Obad, I guess you're listed for B-2 and commonality. Do you want to speak to that, either of those, both? Yes, Your Honor. Thank you very much. Good morning. May I please report my name is Marjorie Obad, together with Danielle Gobel. We represent a Pelley defendant, the school district of Philadelphia. As the court has already stated, the responsibility of the burden of the plaintiffs is to show that there is a common class questions, and here the common class questions- Common issue of law or fact. Pardon me? A common issue of law or fact. Yes. And the questions presented by the plaintiffs here all relate to the translation and interpretation services that they're claiming the district fails to provide in a systemic manner. The issue is that there is no, they can't cite to any stipulation or any kind of requirement regarding translation and interpretation services because there aren't what they refer to as a statutory mandate. That's the crux of the case here is the meaningful participation. And as this court has recognized, meaningful participation requires an individualized review of the factual circumstances. That's given particular weight to whether the parent is able to attend the IEP, whether they're able to ask questions, and whether the suggestions that they make are actually honestly considered by the IEP team and implemented. The court, the district court here recognized that because of the individualized nature of the meaningful participation requirement, they are not able to show class questions. In fact, the court here specifically looked at the meaningful participation requirement relating to the issues about language services and looked at the parental participation requirement. That language specifically says that the public agency must take steps to ensure that both parents have a child with a disability present at the IEP team meeting and has to be able to be afforded opportunity to participate, including being able to notify the parents that the meeting is going to take place and schedule a meeting that's mutually convenient. And then the third requirement that's cited in the district court opinion is take whatever action is necessary to ensure that the parent understands proceedings of the IEP team meeting, including arranging for an interpreter or other action as necessary. So the language that the district court notes is that the statute only requires interpreters or other actions on an as appropriate basis as needed to ensure meaningful participation. The court held that given the framework of the IDA statute, the meaningful participation standard is not subject to common enforcement. In fact, the court looked at the record and stated that it held that meaningful participation does not require a certain course of conduct, which is what the plaintiff is requesting here by school, but rather requires a fact intensive inquiry into the individual circumstances that any determination that cohesion exists, don't they? Yes, that yes, the fact intensive inquiry is not only is it that not only is it relate to the various circumstances, but it's also done at the discretion of the school personnel who are interacting with the parent who are able to make that assessment as to what is necessary. So contrary to what Mr. San Antoine stated at the decision is made by the special education director. The provision he's referring to is it gets to like a second point that the way that the school district addresses the necessary services that are going to be provided to a parent is done at the school level. The district provided a lot of statements in the record as to the way that the school district handles this issue and stated that it is the discretion at the school district level is appropriate to make those determinations. And the school personnel provided lots of information in that record regarding how those decisions are made and what information they use to make sure that parents meaningfully participate. It's only at the level of if there's a denial, which there was no evidence in this case, there ever was a denial, it's only when there's a denial that the policy would provide that the director would get to review that denial. So it's clear that not only is the decision as to whether or not what services are going to be provided to a parent done by individuals who are dealing directly with that parent, it's also clear that the intention of the school district, as they stated, as every... From all of the individuals that the district testified is that the parent is a primary part of the process, that they're an individual part and that every step is taken to ensure that they meaningfully participate. The plaintiffs are complaining that this system really doesn't seem to be working. One of the plaintiffs waited nine months, I think, through a special hearing before a particular service was provided. And yet, when you're dealing with young kids in school, you need a resolution quicker than that. Is there no way under the provisions of the class action type we're dealing with here that you can't provide for a system-wide system that responds to individual inquiries and complaints? First, although the nine months that was referred to of the hearing that TR went through until the determination that she was entitled to get translated documents, I can represent to the court that the record reflects that she actually got those translated documents prior to the hearing officer stating that she was required to get them going forward, but she actually received those translated documents. The issue that is raised by the plaintiffs is that there are systemic failures and there's no record of systemic failures. In fact, what the plaintiffs state in their reply briefs and in all their briefs to the court is that they state five different issues as to steps that they're saying need to be addressed to go forward. That really puts the rabbit in the hat. I mean, that's why the plaintiffs want to use a procedural rule as a means of developing on an evidentiary basis that a systemic failure indeed exists here, right? Not saying that they have mustered that evidence, nor am I suggesting that they can muster that evidence. I'm just saying that's why they want the class action device available to them. You're correct, your honor. In fact, you asked Mr. Stanton about the policies that are in place at the school district and there's guidance at the special education level that provides information on and requirements for services that need to be provided to ensure that language services are provided in special education to the parents. And it's clear from the policies that are implemented that not only that all of the required documents in the IDA are translated and there's no evidence that they aren't and that's the district court found that there was no evidence presented in this case that there were systemic failures of any of the ID obligations, but there also is specific information in the procedural safeguards that addresses the information being given to the parents as to what their translation and interpretation services are and what can be asked for and how they can ask for them. So, you know, it's clear to Judge Roth's question that despite the fact that the statements are systemic failures, that there are systemic failures and that the plaintiffs in this case are unable to show that there's a mandate that's been violated with respect to meaningful participation in a class way. So, they then try to almost concoct issues that they're stating are obligations. They say that every, as Mr. Stanton said, that he's concerned that the English-speaking parents receive the IEP documents in English. He actually says in his papers, the school district goes to additional expense to ensure that the English-speaking parents receive the IEP document in English. That isn't an additional expense. The IEP documents are in English because the IEP team works in English. Those documents are sent, all of the IEP plans are sent to all of the parents. And LEP parents are provided with information that goes along with that IEP plan that's translated into eight different languages that tells them what their rights are to get translation services. And they have the right to have the documents translated, including drafts that's specifically provided for it in the guidance given by the to the school level. And Ms. Lynn, who was one of the plaintiffs in this case, initially received drafts of the IEPs until the special education director who attended eight of her IEP meetings determined that providing the IEP drafts to Ms. Lynn was impeding the timeliness of implementing her child's IEP plan. All right. Let me at this if they have any further questions since time is up. I don't. I have no further. All right. Thank you. We'll have Mr. St. Antoine on rebuttal. Thank you, Your Honor. Let me first state that nowhere did the district court find either in the class certification decision or on summary judgment that the system is working. He disagreed with us about whether this case should be but he did not find that that on the system as a whole or these individual plaintiffs were receiving the language services that they needed. For example, in the case of Ms. Perez, she was. How does that help you? I mean, assuming then that there is some relief granted by the hearing officer, how does that lack of a determination that the system is working? How does that aid your legal case here? Well, we certainly need to do more, but I want to correct a misimpression that the defendant is thinking about the record below on what informs our position on is that the problems we are seeing for our named plaintiffs on are the result of policy decisions made by the district that apply not just to these individual parents, but to similarly situated parents who are not proficient in English. And that includes the to provide parents with draft IEP plans so that when they go to a meeting, they will have had an opportunity to prepare for that meeting and to follow along during the discussion. But that's a decision that the district has made that embodies a recognition that for a parent to participate on, they need access to that document. The commonality for our class is that when that document is given to them in a form that they simply cannot read, they are not in the same situation as their English-speaking counterparts. They go to the meeting. There's a discussion about the document. They cannot follow along. Sometimes there's not a person in the room who has access to the document and can provide even sight translations. That is a common problem. I know my time is limited, so I want to emphasize a couple of other points. First, I want to make sure that the court didn't have any questions on numerosity. It's obviously a grounds that the district court relied upon. If my colleagues have any questions, they may ask them. As you can tell from my position, it's not an issue I believe we need to reach. But if we reached it, I tend to think that there's a good case of numerosity. The point I really want to emphasize is what the hearing officer can and cannot do. We know from experience what that is. I would recommend to the court consideration of the hearing officer's decision on the request for systemic relief. He made clear his role was to look to see if there had been a pass. We know that. That's Payton on the record. The hearing officer said he did not have that authority. Your time is up, so if you just wrap up very quickly, please. Last thing I would say, Your Honor, consistent with our position is there's been a number of submissions that talk about the importance of B-2 classes to provide forward-looking remedies. We think respectfully, Your Honor, this is one of those situations. Thank you very much for Your Honor's time. Thank you very much, Mr. Santorin, Ms. Goble, Ms. Obad. Thank you. We will take the case under advisement, and I will ask the clerk to adjourn these proceedings. Thank you, Chief.